UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SCOTT SIDELL,

    *Plaintiff*,

v.

777 PARTNERS LLC, and STEVEN PASKO,

    *Defendants*.

_____/

## COMPLAINT

Plaintiff, Scott Sidell ("Plaintiff" or "Sidell"), by and through undersigned counsel, hereby files this civil action complaint against 777 Partners LLC ("777") and Steven Pasko ("Pasko") (collectively, "Defendants"), and requests a trial of all issues so triable, and in support thereof, avers as follows:

1. This is an action for the breach of employment and indemnification agreements that entitled Mr. Sidell to benefits and compensation for years of dedicated service to his employer, 777. Instead of honoring these agreements, 777 has refused to pay Mr. Sidell his earned benefits and compensation. He is now forced to retain counsel and bring this complaint to receive what he rightfully earned. For the following reasons, Defendants are jointly and severally liable to Mr. Sidell for the full amount of benefits and compensation he is owed.

2. *First*, under a deferred compensation plan and award agreement entered into between 777 and Mr. Sidell, Mr. Sidell was awarded $2,310,000 in deferred compensation in exchange for remaining an employee at 777 through August 2021. Mr. Sidell met this obligation under the agreement and became fully vested in his award on August 10, 2021, which required 777

to pay out the award over the next five years. 777 paid Mr. Sidell his 2022 payment but failed to pay his 2023 and 2024 award payments. 777 informed Ms. Sidell in April 2024 that it would not pay his outstanding award and that the deferred compensation plan was "suspended" indefinitely for future payments and retroactively for all payments back to 2023. 777's purported suspension of the same deferred compensation plan has been found to be invalid as it violates the terms of the plan and agreements by an arbitrator in an American Arbitration Association ("AAA") proceeding, which has been filed in Florida state court to confirm the arbitration award (the "Arbitration Award").[1] As detailed below and in the Arbitration Award, 777's conduct constitutes a breach of contract entitling Mr. Sidell to the full amount of his outstanding compensation due under the deferred compensation plan and award agreement.[2]

3.  *Second,* Mr. Sidell's employment agreement entitled him to annual compensation bonuses to be paid at the same time other 777 employees received their bonuses. Mr. Sidell received his annual bonuses from 2017 through 2021 as required under his employment agreement. However, 777 failed to pay Mr. Sidell his 2022 bonus of $325,000 and 2023 bonus of $325,000. As such, 777 breached the employment agreement and Mr. Sidell is entitled to $650,000 in outstanding bonus payments.

---

[1] *Juan Arciniegas et al. vs 777 Partners LLC*, 2025-001159-CA-01, Dkt. 2 (Fla. Cir. Ct. Jan. 23, 2025).

[2] Mr. Sidell has alleged that 777's principal lender, Advantage Capital Holdings Inc. ("A-CAP"), and its Chairman and CEO, Kenneth King, forced 777 to suspend the deferred compensation plan and award agreements and have sought to hold A-CAP and King accountable in federal court for tortious interference with a contract. *Sidell v. King et al.*, 1:24-cv-25101-JAL, Dkt. 1 (S.D. Fla. Dec. 27, 2024). If discovery in that case or this case shows that A-CAP and King actually took control of 777 in May 2023, as alleged in another federal litigation in the Southern District of New York, Mr. Sidell reserves the right to add a claim for breach of the deferred compensation plan and award agreement's change in control provision.

4. *Lastly*, under its operating agreement, 777 is required to indemnify officers for any legal fees and costs associated with participating in legal matters for work done on behalf of 777. 777 is under investigation by both the United States Department of Justice ("DOJ") and United States Securities and Exchange Commission ("SEC"). Through no fault of his own, Mr. Sidell has been required to participate in the DOJ and SEC investigations. As a former officer of 777, 777 is required to pay for any and all legal fees and cost he incurred related to the DOJ and SEC investigations. To date, 777 paid $7,430.00 directly to Mr. Sidell's counsel, but has failed to pay $6,600.00, which is past due. Additionally, Mr. Sidell's attorney requires a deposit of $50,000 to continue to represent Mr. Sidell in the DOJ and SEC investigations. Pursuant to the indemnity agreement, 777 is required to immediately pay the past due amount and continue to pay any new legal fees and costs associated with the DOJ and SEC investigations as they become due.

5. Mr. Sidell brings this demand to remedy these wrongs and enforce his employment agreements.

## THE PARTIES, JURISDICTION AND VENUE

6. Plaintiff is a resident of Connecticut, over the age of 18, and was employed by 777 from August 12, 2017, until December 20, 2024.

7. Defendant 777 is a Delaware limited liability company organized and existing under the laws of the State of Delaware and maintains its principal place of business in Miami-Dade County, Florida at 100 SE 2nd Street, Suite 2000, Miami, FL 33131.

8. Defendant Pasko was a managing member of 777 until May 6, 2024, and at all relevant times was a member of 777's Board of Managers and, as such, was a Plan Administrator of the 777 Partners Deferred Cash Plan. On information and belief, he is a resident of Miami-Dade County, Florida, and over the age of 18.

9. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1) because the matter is between citizens of different states and the controversy exceeds $75,000.00.

10. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the underlying cause of action occurred in Miami-Dade County, Florida and Plaintiff was employed by 777 at its Miami, Florida headquarters.[3]

## FACTUAL ALLEGATIONS

### PLAINTIFF'S EMPLOYMENT AND RELEVANT CONTRACTS

11. On August 12, 2017, Plaintiff began working as Principal and Head of Alternative Energy and Infrastructure under the 777 Investment Team.

12. On December 21, 2018, Plaintiff entered into an employment agreement with 777 (the "Employment Agreement"). A true and correct copy of the Employment Agreement is attached hereto as Exhibit A.

13. Pursuant to the Employment Agreement, Plaintiff was employed for a term of three years; on the third anniversary of his start date (and on each subsequent anniversary), Plaintiff's Employment Agreement would be automatically renewed for an additional 12-month term unless 777 or Plaintiff delivered a written notice of intent not to renew the agreement at least thirty days before the end of the applicable term. Ex. A at § 1.

14. Plaintiff's compensation package included an annual salary, eligibility for annual

---

[3] Plaintiff's employment agreement contains an arbitration clause requiring all employment related disputes to be litigated through AAA arbitration. However, due to 777's withdrawal from at least one other unrelated arbitration, counsel for Plaintiff, on four separate occasions over the course of two weeks, requested that Defendants' counsel confirm whether Defendants intended to enforce the arbitration provision and provided a deadline to receive those assurance or Plaintiff would file this claim in federal court. Defendants' counsel acknowledged the request and deadline but, as of the time of this filing, neither Defendants' counsel nor Defendants have affirmatively expressed their intent to enforce the arbitration clause.

bonuses, equity incentive participation, as well as other benefit plans.

15. On April 9, 2021, Plaintiff entered into the 777 Partners Deferred Cash Plan Award Agreement (the "Award Agreement") with 777. A true and correct copy of the Award Agreement is attached hereto as Exhibit B.

16. The Award Agreement incorporated the terms and provisions of the 777 Partners Deferred Cash Plan (the "Plan") and provides that any awards granted under the Award Agreement are "subject to all of the terms and conditions of the Plan." A true and correct copy of the Plan is attached hereto as Exhibit C.

17. 777's operating agreement (the "Operating Agreement"), which Mr. Sidell does not have in his possession but will seek through discovery, requires 777 to pay its officers and directors legal fees, including those associated with litigation and government investigations that are brought against 777.

18. On April 11, 2024, 777 provided Mr. Sidell with written notice of its intent not to renew the Employment Agreement. As a result, Mr. Sidell's term of employment with 777 ended on December 20, 2024.

### THE PLAN AND THE AWARD AGREEMENT'S RELEVANT DEFINITIONS AND PROVISIONS

19. At the time of its creation, the Plan's Administrator was the Board of Managers of 777. Ex. C at § 1.1.

20. The Plan's Administrator has the authority to grant Award Agreements, which are agreements entered into between each Plan participant and 777 and were not required to be "the same with respect to each Participant." Ex. C at §§ 1.3, 3.1.

21. The Award Agreements granted specific awards to the individual participant that was subject to the unique agreement. For example, Plaintiff's Award Agreement defined "Award"

to mean the $2,310,000 he was granted in his Award Agreement. Ex. B at preamble (777 "hereby grants an award of the amount specified above the (the '<u>Award</u>') to the individual named above (the '<u>Participant</u>')." (emphasis in original).

22. An Award granted under an Award Agreement was initially fully unvested and was merely issued and outstanding to a participant. Over time, the Award would have both "vested" and "unvested" portions until it became fully vested. Ex. B at § 3.

23. After an Award was granted, a participant would "become vested in the Participant's Award" on the fourth anniversary of the Base Date. Ex. B at §§ 2-3. The fully vested benefits would then be paid out over the next five years. Ex. B at § 5.

24. The Plan's Administrator has the authority to amend, suspend, or terminate the Plan and Award under certain limited circumstances. Ex. C at §§ 3.1, 4.2. However, the Plan and Award Agreement set clear and firm boundaries that limited the Plan's Administrator's ability to adversely affect participant's entitlement to benefits under the agreements, including, but not limited to:

   a. The Plan Administrator could **<u>only</u>** amend an "Award Agreement provided that the rights and obligations of the Participant of the Award that is the subject of any such Award Agreement are **<u>not affected adversely</u>**." Ex. C at § 3.1 (emphasis added).

   b. A vested Award could only be forfeited by a participant if he was terminated for cause or if he breached the Restricted Covenant Agreement. Otherwise, "upon the Participant's Termination of Service for any reason, the Participant shall forfeit any portion of the Award with respect to which the Participant **<u>has not yet become vested</u>**." Ex. B at § 4 (emphasis added).

   c. "[N]o amendment (taken as a whole with any other amendment adopted at such time), suspension, or termination, **<u>without the consent</u>** of the affected Participant, **<u>shall materially adversely and disproportionately affect</u>** any then -**<u>issued and -outstanding Awards</u>**." Ex. C at § 4.2 (emphasis added).

   d. "Subject to the provisions of the Plan, the provisions of this Agreement may not be amended, modified, supplemented or terminated, and waivers or consents to departures from the provisions hereof **<u>may not be given, without the written consent of each of the parties hereto</u>**." Ex. B at § 12 (emphasis added).

25. The Plan insulates the Plan's Administrator from individual liability related to the Plan *only* if their actions are "made in good faith with respect to the Plan or Awards." Ex. C at § 3.2.

26. The Plan and Award Agreement are governed by the laws of the State of Delaware. Ex. B at § 16; Ex. C at § 4.7.

## PLAINTIFF'S AWARD UNDER THE AWARD AGREEMENT

27. Per the Award Agreement, 777 awarded Plaintiff $2,310,000 (the "Award"), which vested "in four (4) equal annual installments, on each anniversary of the Base Date." Ex. B at preamble, § 3.

28. As indicated in the Award Agreement, the Base Date was August 2017, and therefore the Award became fully vested as of August 2021. Ex. B at preamble, § 3.

29. Once vested, the Award was to be paid out in five installments on each anniversary of the Base Date illustrated by the following:

| **Anniversary of Base Date** | **Payment Date** | **Percentage of Award** | **Dollar Amount** |
|---|---|---|---|
| 5-Year Anniversary | August 10, 2022 | 10% | $231,000 |
| 6-Year Anniversary | August 10, 2023 | 15% | $346,500 |
| 7-Year Anniversary | August 10, 2024 | 20% | $462,000 |
| 8-Year Anniversary | August 10, 2025 | 25% | $577,500 |
| 9-Year Anniversary | August 10, 2026 | 30% | $693,000 |

Ex. B at § 5.

30. Each of the five payments owed under the Award Agreement was to be made within ten (10) days following the applicable payment date, *i.e.*, no later than August 10th of each applicable year. *Id.*

**DEFENDANTS BREACH THE PLAN AND AWARD AGREEMENT IN BAD FAITH**

31. 777 did not pay Plaintiff his first installment on August 10, 2022 in one lump sum as was required under the Award Agreement. Instead, Plaintiff was paid $231,000 over the course of several years, receiving his last payment on April 5, 2024.

32. Plaintiff did not receive any amount of his August 10, 2023 payment of $346,500, which was due before the alleged suspension of the Plan, under the Award Agreement.

33. On or around April 15, 2024, Pasko informed Plaintiff that 777 was going to temporarily stop payments under the Plan.

34. Upon information and belief, in or around April 2024, a resolution was passed by the Plan Administrators purportedly suspending the Plan prospectively and retroactively to March 2023.

35. Neither Pasko nor any other employee of 777 ever sought Mr. Sidell's consent to suspend the Plan as is required since the suspension adversely affected his right to his $2,079,000 in remaining vested benefits (after subtracting the August 10, 2022 payment) under the Award Agreement. *See* Ex. B at § 12; Ex. C at § 3.1.

36. Following the unilateral and unauthorized suspension, Plaintiff did not receive his August 10, 2024 payment of $462,000.

37. 777 had no authority under the Plan to suspend the Plan or payment of vested benefits to Plaintiff. The Plan Administrator only had the right to suspend the Plan and withhold certain issued and outstanding unvested Awards, for which it also required participant consent. Ex. C at § 4.2.

38. Therefore, 777's suspension of the Plan and withholding of Plaintiff's August 2023 and August 2024 vested benefits payments and intent to withhold Plaintiff's August 2025 and

August 2026 vested benefits constitutes a material breach and anticipatory breach of the Plan and Award Agreement.

39. In a recent AAA arbitration, 777's purported suspension of the same Plan was ruled invalid as it breached the terms of the Plan and the Award Agreement. Specifically, the arbitrator ruled that "[t]he suspension of the Plan and Award Agreements constituted a breach of contract and 777's financial condition does not justify its failing to pay vested benefits," and as a result, the claimants were "entitled to the full amount of their remaining Awards, to be paid as they become due consistent with the Plan, plus prejudgment interest at the applicable statutory rate, from Respondent 777." The claimants in the matter have petitioned to confirm the arbitration award. *See Juan Arciniegas et al. vs 777 Partners LLC*, 2025-001159-CA-01, Dkt. 2 (Fla. Cir. Ct. Jan. 23, 2025).

40. Additionally, Pasko is personally liable for the breaches because he has acted in bad faith and waived his immunity from liability under the Plan by refusing to pay Plaintiff's vested benefits, knowing the benefits were due, in an effort to roll the dice and hope Plaintiff would not seek what he is due under the Plan and Award Agreement. Pasko also acted in bad faith by allowing A-CAP and King, both non-Plan Administrators, to allegedly force the suspension of Plan and Award Agreements in violation of the terms of the Plan. *See* Ex. C at § 3.2.

**THE EMPLOYMENT AGREEMENT AND PLAINTIFF'S AWARD THEREUNDER**

41. Pursuant to Section 4 of the Employment Agreement, Mr. Sidell was "eligible for an annual incentive bonus award determined by the Company in respect of each calendar year during Employee's employment ('Discretionary Bonus')." Ex. A at § 4(b).

42. The Employment Agreement provided that any bonus "shall be paid to [Mr. Sidell] at the same time as annual bonuses are generally payable to other senior employees of the

Company . . . but in no event later than 60 calendar days following the conclusion of the calendar year for which the bonus is attributable." *Id*.

43. The Employment Agreement also provides that Mr. Sidell is entitled to any earned bonus even if he is no longer employed as long as he continued his employment through the bonus "payment date" (*i.e.*, the date other employees received their bonus but no later than 60 days following the calendar year for which the bonus was attributable). *Id*.

44. The Employment Agreement is governed by the laws of the State of Florida. *Id*. at § 15(h).

## 777 BREACHES THE EMPLOYMENT AGREEMENT

45. Plaintiff earned an annual bonus for calendar year 2020 in an amount equal to his annual salary for calendar year 2020. 777 paid Plaintiff his 2020 annual bonus in full.

46. Plaintiff earned an annual bonus for calendar year 2021 in an amount equal to his annual salary for calendar year 2021. 777 paid Plaintiff his 2021 annual bonus in full.

47. In or around April 2023, Joshua Wander, another member of 777's Board of Directors, led a meeting with the Investment Team, including Mr. Sidell, during which he informed the attendees that they had earned annual bonuses for calendar year 2022. Mr. Wander stated that 777 would pay the bonuses by the end of April 2023.

48. Upon information and belief, 777 paid all but a handful of those employees their annual bonuses for calendar year 2022.

49. Based on Mr. Sidell's 2020 and 2021 annual bonuses, he expected to receive $325,000 for his 2022 annual bonus, which was the amount of his annual salary for calendar year 2022.

50. 777 did not pay Plaintiff his 2022 annual bonus on the bonus payment date, by the end of April 2023, or at any time thereafter. In fact, over a year later, on May 8, 2024, Mr.

Wander acknowledged that Mr. Sidell earned his 2022 annual bonus and expressed surprise that he had not been paid. In the same conversation, Mr. Wander informed Plaintiff that he was only aware of one other managing director that had not yet received their bonus for the 2022 calendar year.

51. Upon information and belief, in early 2024, 777 paid certain members of the Investment Team their annual bonuses for calendar year 2023, triggering the bonus payment date for all other Investment Team members.

52. 777 did not pay Plaintiff his 2023 annual bonus on the bonus payment date.

53. Based on Mr. Sidell's 2020 and 2021 annual bonuses, he expected to receive $325,000 for his 2023 annual bonus, which was the amount of his annual salary for calendar year 2023.

54. Plaintiff's term of employment ended on December 20, 2024. He has still not received any amount of his $325,000 2022 annual bonus or $325,000 2023 annual bonus.

55. Therefore, 777 breached the Employment Agreement and Mr. Sidell is entitled to payment in full of his 2022 and 2023 Annual Bonuses, totaling $650,000, with interest.

**DEFENDANTS BREACH THE 777 OPERATING AGREEMENT IN BAD FAITH**

56. Pursuant to 777's Operating Agreement, 777 is required to indemnify officers and directors for any legal fees and cost associated with participating in legal matters for work done on behalf 777.

57. In 2024, the DOJ and SEC launched investigations into 777.

58. Mr. Sidell was compelled by the DOJ and SEC to participate in the investigations. Mr. Sidell retained Max Nicolas of Max Nicolas LLC to represent him in the investigations.

59. As required by the Operating Agreement, 777 paid $7,430.00 directly to Mr. Sidell's counsel for his representation of Mr. Sidell in the investigations through August 31.

60. On or about October 31, 2024, 777 failed to pay $6,600.00 due to Mr. Sidell's counsel for his representation related to the investigations. The amount is now past due.

61. Mr. Sidell's counsel withdrew from the matter because of 777's failure to pay the outstanding amount and Mr. Sidell is currently participating in the investigations without counsel.

62. Given the severity of the allegations against 777 and the complexity of the investigation, Mr. Sidell's former counsel requires a $50,000 retainer to represent Mr. Sidell going forward in the investigations.

63. Therefore, 777 has breached the Operating Agreement and Mr. Sidell is entitled to the $6,600 in the past due legal fees and the $50,000 retainer for future representation associated with the DOJ and SEC investigations.

## COUNT I
### Breach and Anticipatory Breach of Contract – Failure to Pay Benefits Due Under the Plan and Award Agreement
### (Against All Defendants)

64. Plaintiff restates and incorporates, as if fully set forth herein, the allegations contained in paragraphs 1 through 63 above.

65. Under the Award Agreement, 777 issued Plaintiff an Award in the amount of $2,310,000, which vested in August 2021 and was to be paid out in five annual installments, beginning in August 2022.

66. The Award Agreement required that 777 make a payment to Plaintiff on August 10, 2023, in the amount of $346,500, which represents 15% of the Award. The payment was not made on August 10, 2023.

67. The Award Agreement required that 777 make a payment to Plaintiff on August 10, 2024, in the amount of $462,000, which represents 20% of the Award. The payment was not made on August 10, 2024.

68. The Award Agreement required that 777 make a payment to Plaintiff on August 10, 2025, in the amount of $577,500, which represents 25% of the Award.

69. The Award Agreement required that 777 make a payment to Plaintiff on August 10, 2026, in the amount of $693,000, which represents 30% of the Award.

70. 777 committed a breach of the Award Agreement by failing to make the August 10, 2023 and August 10, 2024 payments.

71. 777 also committed an anticipatory breach of the Award Agreement by purportedly suspending the Plan and the August 2025 and August 2026 payments under the Award Agreement, even though it had no right to do so under the Plan, at the apparent direction of A-CAP and King, in or around April 2024. *See Skyways Motor Lodge Corp. v. Del. River & Bay Auth.*, 2019 Del. Ch. LEXIS 206, at *29 (Del. Ch. Feb. 21, 2019) (finding that a statement by a party that it would not comply with the terms of a contract constituted a repudiation of the contract and stating that a repudiation happens when a party's actions amount to a "significant and substantial alteration of both the present and the reasonably anticipated future relations created by [the] agreement") (quoting *PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.,* 857 A.2d 998, 1014 (Del. Ch. 2004)).

72. Pasko is personally liable for the breach and anticipatory breach of contract for acting in bad faith, pursuant to the terms of the Plan, by suspending the Plan and payments under the Award Agreement even though he knew the benefits could not be withheld.

73. Defendants continue to breach the Award Agreement.

74. As a direct result, Plaintiff has suffered damages of $2,079,000, being the $346,500 payment that was not made on August 10, 2023, the $462,000 payment that became due but was not made on August 10, 2024, the $577,500 payment that would have been due on August 10, 2025, and the $693,000 payment that would have been due on August 10, 2026, pre- and post-award interest, as well as his incurred costs and reasonable attorneys' fees. *See Schlosser & Dennis, LLC v. Traders Alley, LLC*, 2017 Del. Super. LEXIS 331, at *16 (Del. Super. Ct. July 6, 2017) (explaining that under Delaware law and the "general principles of contract law, an anticipatory repudiation gives rise to an immediate claim for total breach of contract damages against the repudiating party").

75. Plaintiff has retained the undersigned counsel to represent him in this matter, and pursuant to Fla. Stat. §448.08, Plaintiff is entitled to recover all reasonable attorneys' fees and costs incurred in this matter from Defendants.

## COUNT II
### Breach of Contract – Failure to Pay Benefits
### Under the Employment Agreement
### (Against 777)

76. Plaintiff restates and incorporates, as if fully set forth herein, the allegations contained in paragraphs 1 through 63 above.

77. Under the Employment Agreement, Plaintiff earned a $325,000 annual bonus for 2022, and a $325,000 annual bonus for 2023.

78. 777 failed to pay Plaintiff any amount of his earned annual bonuses for calendar years 2022 or 2023.

79. 777 breached the Employment Agreement by failing to pay Plaintiff the amount of $325,000 by the 2022 bonus payment date and $325,000 by the 2023 bonus payment date.

80. As a direct result, Plaintiff has suffered damages, being no less than $650,000, pre- and post-award interest from the respective bonus payment dates, as well as his incurred costs and reasonable attorneys' fees.

81. Plaintiff has retained the undersigned counsel to represent him in this matter, and pursuant to Fla. Stat. §448.08, Plaintiff is entitled to recover all reasonable attorneys' fees and costs incurred in this matter from Defendants.

### COUNT III
### Breach of Contract – Failure to Indemnify
### Under Operating Agreement
### (Against 777)

82. Plaintiff restates and incorporates, as if fully set forth herein, the allegations contained in paragraphs 1 through 63 above.

83. Under 777's Operating Agreement, Plaintiff is entitled to payment of all legal fees and costs associated with litigation and/or government investigations into 777.

84. 777 failed to pay Plaintiff's outstanding legal fees and cost of $6,600 associated with the DOJ and SEC investigations into 777.

85. 777 also has not agreed to pay Plaintiff's future legal fees for his representations in the DOJ and SEC investigations, which require a retainer of $50,000 to Plaintiff's counsel.

86. As a direct result, 777 has breached the Operating Agreement and Plaintiff has suffered damages, being no less than $6,600, pre- and post-award interest, as well as his incurred costs and reasonable attorneys' fees, and the $50,000 retainer Plaintiff must pay to continue to be represented in the DOJ and SEC investigations.

87. Plaintiff has retained the undersigned counsel to represent him in this matter, and pursuant to Fla. Stat. §448.08, Plaintiff is entitled to recover all reasonable attorneys' fees and costs incurred in this matter.

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

a. For an award of the **$2,079,000** due under the Award Agreement plus prejudgment interest;

b. For an award of the **$650,000** due under the Employment Agreement plus prejudgment interest;

c. For an award of **$6,600** due under the Operating Agreement for past due legal fees, plus prejudgment interest;

d. For pre- and post-judgment interest;

e. For an award of reasonable attorney's fees and costs, as determined by the Court and associated with seeking this judgment;

f. For injunctive and equitable relief as provided by law, including an order requiring 777 to continue to make payments under the Plan and Award Agreement if it does not determine that future payments are due now and to pay Mr. Sidell's legal fees, including the **$50,000** retainer required by his counsel in the DOJ and SEC investigations.

g. For such other and further relief as may be just and proper.

Respectfully submitted this 30th day of January 2025.

By: */s/ Tulio D. Chirinos*
Tulio D. Chirinos, Esq.
Florida Bar No. 1022468
tchirinos@chirinoslawfirm.com
Chirinos Law Firm PLLC
370 Camino Gardens Blvd., Suite 106
Boca Raton, FL 33432
Tel.: (561) 299-6334

Jenny M. Lewis, Esq. (PHV forthcoming)
jlewis@chirinoslawfirm.com
Chirinos Law Firm PLLC
1323 North Blvd.
Houston, TX 77006
Tel.: (832) 466-5575

*Counsel for Plaintiff Scott Sidell*