# EXHIBIT C

# 777 PARTNERS DEFERRED CASH PLAN

## ARTICLE I.

## DEFINITIONS

Wherever the following terms are used in the Plan they shall have the meanings specified below, unless the context clearly indicates otherwise. The singular pronoun shall include the plural where the context so indicates.

1.1. "Administrator" means the Board of Managers of the Company or committee thereof.

1.2. "Award" means a specified cash amount representing a pro-rata of the increase in the fair market value of the Company.

1.3. "Award Agreement" means any written notice, agreement, terms and conditions, contract or other instrument or document evidencing an Award, including through electronic medium, which shall contain such terms and conditions with respect to an Award as the Administrator shall determine consistent with the Plan.

1.4. "Cause" shall have the same meaning as in an employment agreement (or other arrangement, including, but not limited to, any severance arrangement) between a Participant and the Company or any of its affiliates, or, if no such employment agreement (or other arrangement, including, but not limited to, any severance arrangement) exists or "Cause" is not defined therein, "Cause" shall mean: (i) the Participant's indictment, conviction of, or plea of guilty or nolo contendere to, an act constituting a felony under the laws of the United States or any state or political subdivision thereof; (ii) the Participant's commission of an act constituting a breach of a duty of care or duty of loyalty, gross negligence or willful misconduct in connection with the Participant's material duties to the Company; (iii) the Participant's commission of an act of fraud, self-dealing, or a conflict of interest in connection with the Participant's employment; (iv) the Participant's breach of any applicable restrictive covenant obligations; (v) the Participant's commission of an act which would make the Participant subject to being enjoined, suspended, barred or otherwise disciplined for violation of any U.S. federal or state or foreign securities laws, rules or regulations, including a statutory disqualification; (vi) if the Participant is covered by an employment agreement with the Company, the Participant's material breach, non-performance, or non-observance of any provision of the employment agreement; (vii) the Participant's conduct tending to bring the Company or its affiliates into public disgrace or disrepute; (viii) material insubordination or failure by the Participant to follow the lawful instructions or directions from the Administrator or its designee; or (ix) the Participant's failure to comply with a material Company policy. If the condition triggering "Cause" is reasonably curable, the Participant will have five (5) days to cure the condition (but only with respect to the first time it occurs) to the reasonable satisfaction of the Administrator. If the condition is cured to the reasonable satisfaction of the Administrator, Cause will not be deemed to exist.

1.5. "Change in Control" means (i) any transfer (including by way of merger, consolidation or other reorganization) in one transaction or a series of related transactions by the

DOC ID - 34213228.3

Company of the equity of the Company if the members of the Company immediately prior to such transaction or series of related transactions own less than fifty percent (50%) of the Company's voting power immediately after such transaction or series of related transactions, or (ii) a sale of all or substantially all of the assets of the Company or its subsidiaries to an independent party who is not an affiliate of any member; provided that, in each case, any such event results in net proceeds (after underwriting discounts and commissions) to the Company of at least $100,000,000.  Notwithstanding the foregoing, for purposes of the Plan a "Change in Control" shall not be deemed to occur unless it constitutes a "Change in Control Event" within the meaning of Section 409A of the Code.

1.6. "Code" means the Internal Revenue Code of 1986, as amended from time to time. Any reference to any section of the Code shall also be a reference to any successor provision and any Treasury Regulation promulgated thereunder.

1.7. "Company" means 777 Partners LLC, a Delaware limited liability company.

1.8. "Disability" means, with respect to a Participant as determined by the Administrator, that the Participant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

1.9. "DRO" means any judgment, decree or order which relates to marital property rights of a spouse or former spouse and is made pursuant to applicable domestic relations law (including community property law).

1.10. "Eligible Individual" means a Person who is an officer, employee, consultant, advisor or director of the Company or any of its affiliates.

1.11. "Participant" means an Eligible Individual who has been granted an Award.

1.12. "Person" means any individual, corporation, partnership, limited liability company, firm, joint venture, association, joint-stock company, trust, incorporated organization, governmental or regulatory or other entity.

1.13. "Plan" means this 777 Partners Deferred Cash Plan, as amended or amended and restated from time to time.

1.14. "Restrictive Covenant Breach" means a Participant's breach of any restrictive covenants, including without limitation, any affirmative contractual obligations to Company or any of its affiliates and any non-competition, non-solicitation or non-disparagement restrictions, between the Participant and the Company or any of its affiliates.

1.15. "Termination of Service" means with respect to a Participant, a termination of such Participant's (a) employment with the Company or any of its affiliates or (b) relationship with the Company or any of its affiliates as a consultant, advisor or director.  For purposes of the Plan, a "Termination of Service," with respect to any Participant, shall be deemed to occur in the

event that a subsidiary of the Company to which the Participant provides services ceases to remain a subsidiary of the Company for any reason.

## ARTICLE II.

## GRANTING OF AWARDS

2.1. <u>Award Agreement</u>. Each Award shall be evidenced by an Award Agreement.

2.2. <u>Plan and Awards Not to Confer Rights with Respect to Continuance of Employment or Relationship</u>. Neither this Plan, the grant of an Award, nor any other action taken hereunder shall be construed as giving any Participant any right to continue such Participant's relationship with the Company or any of its affiliates, nor shall it give any Participant the right to be retained by the Company or any of its affiliates, or interfere in any way with the right of the Company or any of its affiliates to terminate any Participant's employment or relationship, as the case may be, at any time, for any reason.

## ARTICLE III.

## ADMINISTRATION

3.1. <u>Duties and Powers of Administrator</u>. It shall be the duty of the Administrator to conduct the general administration of the Plan in accordance with its provisions. The Administrator shall have the power to interpret the Plan and the Award Agreements, and to adopt such rules for the administration, interpretation and application of the Plan as are consistent therewith, to interpret, amend or revoke any such rules, to delegate authority in accordance with Section 3.3 and to amend any Award Agreement provided that the rights or obligations of the Participant of the Award that is the subject of any such Award Agreement are not affected adversely. Any such grant or award under the Plan need not be the same with respect to each Participant.

3.2. <u>Administrator Liability; Good Faith Actions</u>. All expenses and liabilities which members of the Administrator incur in connection with the administration of the Plan shall be borne by the Company. All actions taken and all interpretations and determinations made by the Administrator in good faith shall be final and binding upon all Participants, the Company and all other interested persons. No members of the Administrator shall be personally liable for any action, determination or interpretation made in good faith with respect to the Plan or Awards, and all members of the Administrator shall be fully protected by the Company in respect of any such action, determination or interpretation.

3.3. <u>Delegation of Authority</u>. The Administrator may, in its sole discretion, designate employees of the Company and professional advisors to assist the Administrator in the administration of the Plan, including with respect to the execution of Award Agreements or other documents, and, to the extent permitted by applicable law, delegate from time to time some or all of its authority to grant Awards under the Plan to a committee or committees consisting of one or more members of the Administrator and/or one or more officers of the Company.

# ARTICLE IV.

## MISCELLANEOUS PROVISIONS

4.1. <u>Transferability of Awards</u>.  No Award under the Plan may be sold, pledged, assigned or transferred in any manner other than by will or the laws of descent and distribution or, subject to the consent of the Administrator, pursuant to a DRO, unless and until the shares underlying such Award have been issued, and all restrictions applicable to such shares have lapsed. No Award or interest or right therein shall be liable for the debts, contracts or engagements of the Participant or Participant's successors in interest or shall be subject to disposition by transfer, alienation, anticipation, pledge, hypothecation, encumbrance, assignment or any other means whether such disposition be voluntary or involuntary or by operation of law by judgment, levy, attachment, garnishment or any other legal or equitable proceedings (including bankruptcy), and any attempted disposition thereof shall be null and void and of no effect, except to the extent that such disposition is permitted by the preceding sentence.

4.2. <u>Amendment, Suspension or Termination of the Plan and Awards</u>. The Administrator may, with prospective or retroactive effect, amend, suspend or terminate this Plan or any portion thereof at any time and for any reason; <u>provided</u>, <u>however</u>, that no amendment (taken as a whole with any other amendment adopted at such time), suspension, or termination, without the consent of the affected Participant, shall materially adversely and disproportionately affect any then -issued and -outstanding Awards.

4.3. <u>Tax Withholding</u>. The Company or any of its subsidiaries shall have the authority and the right to deduct or withhold, or require a Participant to remit to the Company, an amount sufficient to satisfy federal, state, local and foreign taxes (including the Participant's Federal Insurance Contributions Act obligation) required by law to be withheld with respect to any taxable event concerning a Participant arising as a result of this Plan.

4.4. <u>Effect of Plan upon Other Compensation Plans</u>. Nothing in this Plan shall be construed to limit the right of the Company or any of its affiliates to establish other plans or to pay compensation to its employees, in cash or property, in a manner that is not expressly authorized under this Plan.  Except as may otherwise be specifically and unequivocally stated under any employee benefit plan, policy or program, no amount payable in respect of any Award shall be treated as compensation for purposes of calculating a Participant's rights under any such plan, policy or program.  The selection of a Participant shall neither entitle such Participant to, nor disqualify such Participant from, participation in any other award or incentive plan.

4.5. <u>Compliance with Laws</u>. The Plan, the granting and vesting of Awards under the Plan and the payment of money under the Plan or under Awards granted or awarded hereunder are subject to compliance with all applicable federal, state, local and foreign laws, rules and regulations (including but not limited to federal, state and foreign securities law and margin requirements) and to such approvals by any listing, regulatory or governmental authority as may, in the advice of counsel for the Company, be necessary or advisable in connection therewith. Any securities delivered under the Plan shall be subject to such restrictions, and the Person acquiring such securities shall, if requested by the Company, provide such assurances and representations to the Company as the Company may deem necessary or desirable to assure

compliance with all applicable legal requirements. To the extent permitted by applicable law, the Plan and Awards granted or awarded hereunder shall be deemed amended to the extent necessary to conform to such laws, rules and regulations.

4.6. <u>Titles</u>. Titles are provided herein for convenience only and are not to serve as a basis for interpretation or construction of the Plan.

4.7. <u>Governing Law</u>. This Plan and all rights thereunder shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to conflict of laws principles thereof.

4.8. <u>Section 409A</u>. Each Award is intended to comply with Section 409A of the Code and, to the extent applicable, the Plan and Award Agreements shall be limited, construed and interpreted in accordance with Section 409A of the Code. Neither the Company, nor any of its subsidiaries, shall be liable for any additional tax, interest or penalties that may be imposed on a Participant by Section 409A of the Code or any damages for failing to comply with Section 409A of the Code or this Section 4.8. Notwithstanding anything in the Plan or in an Award to the contrary, the following provisions shall apply to Awards:

(a) A Termination of Service shall not be deemed to have occurred for purposes of any provision of an Award providing for payment upon or following a Participant's Termination of Service unless such Termination of Service is also a "Separation from Service" within the meaning of Section 409A of the Code.

(b) Whenever a payment under an Award specifies a payment period with reference to a number of days, the actual date of payment within the specified period shall be within the sole discretion of the Company.

(c) If under the Award an amount is to be paid in two or more installments, each installment shall be treated as a separate payment for purposes of Section 409A of the Code.

Notwithstanding any provision of the Plan to the contrary, the Administrator may adopt such amendments to the Plan and outstanding Award Agreements or adopt other policies and procedures (including amendments, policies and procedures with retroactive effect), or take any other actions, that the Administrator determines are necessary or appropriate to comply with the requirements of Section 409A of the Code.

4.9. <u>ERISA</u>. The Plan and each Award Agreement is intended to constitute a "bonus plan" that is exempt from the requirements of the Employee Retirement Income Security Act of 1974, as amended.

4.10. <u>No Rights to Awards</u>. No Eligible Individual, or any other Person, shall at any time have the right to be selected as a Participant in this Plan nor, having been selected as a Participant and granted an Award or have any right to be granted any additional Awards pursuant to this Plan. The terms and conditions of the Awards are subject to the Administrator's determinations and interpretations with respect thereto and need not be the same with respect to each Participant (whether or not such Participants are similarly situated).

4.11. <u>Unfunded Status</u>.  Neither the Plan nor any Award shall be construed to require the Company to fund any of the Awards payable under the Plan or to set aside or earmark any monies or other assets specifically for payments under the Plan. The Plan is "unfunded," and all payments shall be paid by the Company solely out of its general assets. Participants shall not have any interest in any specific asset of the Company as a result of the Plan. Nothing contained in the Plan and no action taken pursuant to the provisions of the Plan shall create or be construed to create a trust of any kind, or a fiduciary relationship amongst the Company and the Participants or any other Person. To the extent that any Person acquires a right to receive payments from the Company under the Plan, such right shall be no greater than the right of any unsecured general creditor of the Company.

4.12. <u>Severability</u>.  In the event that any provision of this Plan shall be held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining parts of this Plan, and this Plan shall be construed and enforced as if the illegal or invalid provision had not been included.